UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAROL LYNN PAK,

                Plaintiff,

  v.

MICHAEL J. ASTRUE. Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05972-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 14, 2006, plaintiff filed an application for SSI benefits, alleging disability as of

ORDER - 1

July 6, 2005, due to sciatic nerve damage in her back/back problems, pain, depression, and anxiety. See Administrative Record ("AR") 15, 130, 157.  Her application was denied upon initial administrative review on November 1, 2006, and on reconsideration on December 14, 2007. See AR 15, 77, 83.  A hearing was held before an administrative law judge ("ALJ") on October 5, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 27-74.

On January 29, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 15-21.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 30, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481.  On November 28, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on February 22, 2012. See ECF #7.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff did not have a severe mental impairment; (2) in finding she did not have an impairment that met or medically equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 (disorders of the spine); and (3) in assessing her residual functional capacity. The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

ORDER - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their

ORDER - 3

symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

> At step two in this case, the ALJ found in relevant part that:
>
> The claimant has reported depression and anxiety (exhibit 6F), which the [Disability Determination Services ("]DDS["]) consultative psychologist] thought may impose some limitations with daily activities, cognitive functioning and social interaction (exhibits 8F; 9F).  However, examinations did not disclose a severe mental impairment (exhibits 3F; 5F; 17F) and a later DDS reviewer recognized that the claimant did not have a severe mental impairment (exhibit 19F).  The undersigned agrees that the claimant has no severe psychological impairment. . . .

AR 17.  Plaintiff argues that in so finding, the ALJ failed to properly explain why he did not give any weight to the diagnoses provided by his treatment providers.  But the mere fact that a mental health impairment diagnosis has been made alone is insufficient to meet the step two severity requirement.  Rather, as noted above, some – more than minimal – impact on the claimant's ability to perform basic work activities must be shown.

Plaintiff points to the comments of Brian Esparza, M.D., an examining physician, who opined in relevant part that her mental status examination results and the apparent absence of a bipolar affective or primary psychotic disorder "translate[d] into real world employability," but that:

> . . . Difficulty with employability for [plaintiff] includes the fact that she does have fairly significant anxiety with superimposed panic attacks.  This may inhibit her ability to attend work on a regular and consistent basis, but [she] has been able to maintain work despite these symptoms in the past.

AR 353.  Defendant argues the ALJ considered Dr. Esparza's evaluation, which supports the ALJ's determination that plaintiff has no severe mental impairment.  The ALJ, however, only

ORDER - 4

cited to Dr. Esparza's examination to note that plaintiff had reported depression and anxiety. See AR 17.  She did not mention, let alone provide any analysis of, the above comments concerning plaintiff's employability.  Further, while those comments are somewhat equivocal as to whether Dr. Esparza believed plaintiff would experience actual work-related limitations due to her mental health diagnoses, the ALJ should have expressly considered them, given that there certainly is a possibility that they do support a determination of severity at step two.  Absent such a discussion by the ALJ, though, it cannot be said that the ALJ's determination was proper.

As plaintiff also points out, the record contains three global assessment of functioning ("GAF") scores, ranging from 55 to 65. See AR 345, 352, 492.  A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).  "A GAF score of 61-70 reflects mild symptoms or "some difficulty [in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994)).

The Court agrees with defendant that any error committed by the ALJ in not considering

ORDER - 5

the GAF score of 65 (see AR 345) was harmless, given that such a score in general reflects only "mild" symptoms and the ability to function "pretty well." See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."). On the other hand, the two GAF scores of 55 and 60 (see AR 352, 492) indicate the presence of moderate symptoms or difficulties in social or occupational functioning, which could be indicative of more than minimal work-related limitations.

Defendant argues these scores should be discounted, because they "consider factors not relevant to occupational functioning." ECF #11, p. 7. But as noted above, they also indicate the presence of *social* or *occupational* difficulties that clearly are relevant to the determination as to whether a claimant has a severe impairment at step two. More importantly, though, is the fact that this was not a reason the ALJ gave for rejecting that GAF score. Indeed, as just discussed, the ALJ gave no reasons for rejecting them. Accordingly, the ALJ's step two determination cannot be upheld on this basis. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm credibility decision based on evidence ALJ did not discuss).

Plaintiff argues she also should be found to have a severe impairment on the basis that George S. Heffner, M.D., her treating physician, found she had depression and post traumatic stress, which were "marked" in nature (defined as "[v]ery significant interference with the ability to perform one or more basic work-related activities") that affected her ability to communicate. AR 922. This opinion is contained in a physical evaluation form Dr. Heffner completed in early November 2010, and submitted to the Appeals Council after the ALJ had issued her decision. See AR 4, 920-23. Defendant, citing Mayes v. Masanari, 276 F.3d 453 (9th Cir. 2001), argues

ORDER - 6

that in order for this Court to consider such evidence, it must not only be both new and material, but plaintiff must show good cause for not having presented it earlier to the ALJ.  The Court of Appeals in Mayes, however, expressly stated it had *not* decided whether good cause is required to review evidence that is submitted for the first time to the Appeals Council:

> We need not decide whether good cause is required for submission of new evidence to the Appeals Council, as [the claimant] conceded in her briefs that good cause was indeed required.  In a petition for rehearing, which we deny, [the claimant] raises for the first time the argument that 20 C.F.R. § 404.970(b)(2001) requires the Appeals Council to receive new evidence without regard to the issue of good cause. Citing *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir.1993), [the claimant] belatedly argues that good cause is required only when new evidence is submitted to a district court. <u>Mayes misapprehends *Ramirez*.  Because the parties agreed that the new evidence submitted for the first time to the Appeals Council should be considered, *id.* at 1451-52, Ramirez does not address whether submissions to the Appeals Council are or are not subject to the good cause requirement</u>.

Id. at 461 n.3 (emphasis added).

Defendant does recognize, though, that the Ninth Circuit has held that the district court may consider new evidence submitted for the first time to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence. See Ramirez, 8 F.3d at 1451-52[1]; see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials submitted to Appeals Council properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971

---

[1] In Ramirez, the Ninth Circuit found specifically as follows:

> Although the ALJ's decision became [defendant's] final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal.  Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision."  For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.

Id.

ORDER - 7

(9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review to federal court). That said, the Court finds Dr. Heffner's opinion would not cause the ALJ to change her decision. This is because Dr. Heffner did not support his opinion with citation to objective clinical findings. See AR 920-23. Nor do Dr. Heffner's treatment notes – or the other objective medical evidence in the record for that matter – provide support for the level of severity he found. See AR 278-79, 284-86, 296-97, 344-45, 350-54, 356-58, 360-72, 479, 488-93, 495-507, 510-11, 514-17, 527-28, 776, 860-61, 867, 905-06, 916, 1126. The same is true with respect to Dr. Heffner's mid-November 2009 opinion, which was submitted to the Appeals Council for the first time as well, and in which plaintiff was diagnosed with depression and anxiety that again resulted in a "marked" rating. See AR 1022-25.

Lastly, plaintiff argues the several moderate mental functional limitations checked off by Thomas Clifford, Ph.D., in Section I (the "SUMMARY CONCLUSIONS" section) of the mental residual functional capacity assessment ("MRFCA") form he filled out in late October 2006, also should result in a finding of severity. See AR 356-57. Pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), however, **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III [("FUNCTIONAL CAPACITY ASSESSMENT") of the MFRCA form] . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity (']RFC['].**" POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original). While the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nor does the Court find, or plaintiff point out, any valid reasons for declining to follow that directive in this case. On the other hand, given the ALJ's failure to properly evaluate the opinion of Dr.

ORDER - 8

Esparza and the two GAF scores of 55 and 60 contained in the record, her rejection of the limitations noted by Dr. Clifford in Section III of the MRFCA form he completed – e.g., that plaintiff "would do best with limited public contact" (AR 358) – cannot be said to be supported by substantial evidence at this time.

II.     The ALJ's Determination at Step Three

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098.  "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

ORDER - 9

equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

At step three in this case, the ALJ determined that none of plaintiff's impairments met or medically equaled the criteria of any of those contained in the Listings. See AR 17. Specifically, the ALJ found her impairments did "not cause ineffective ambulation or inability to use the upper extremities" or "significantly limit motor, sensory or reflex loss." AR 18. Plaintiff argues the ALJ erred in failing to find the criteria of Listing 1.04 were met or medically equaled in this case. The Court disagrees. Listing 1.04 reads as follows:

ORDER - 10

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff has failed to show the record supports a finding that the above criteria have been met.  For example, the weight of the medical evidence in the record fails to establish nerve root compression accompanied by motor loss and sensory or motor loss. See AR 261-62, 266-67, 270, 278-79, 283-86, 288-89, 292, 294, 296-98, 374-81, 387-88, 392, 396-99, 407, 412-13, 420-21, 432, 448-50, 453, 455, 458, 465-72, 479, 510-17, 527-28, 689, 760-62, 829-30, 860, 867, 879, 906, 916, 921, 960, 971-72, 978-79, 985-86, 988-89, 1011-12, 1023, 1033, 1040-41, 1050, 1091, 1113-15, 1117, 1126-27.  Nor does that evidence demonstrate the existence of spinal archnoiditis resulting in the need for changes in position or posture more than once every 2 hours or lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate effectively,

ORDER - 11

or that it is at least equal in severity to the criteria set forth above. See id. Accordingly, the Court finds the ALJ did not err in finding listing-level severity had not been established in this case.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to perform a full range of light work. See AR 18. The Court agrees with plaintiff that in light of the ALJ's failure to properly evaluate all of the medical evidence in the record concerning her mental impairments, the RFC with which she was assessed cannot be said to be completely accurate at this time. Accordingly, the ALJ erred here as well. The Court, however, declines to find the ALJ erred in finding in relevant part as follows:

ORDER - 12

> In December 2006 the claimant sought ER treatment for back pain. She presented with intact motor and sensory functioning (exhibit 12F:64-66), consistent with the conclusions reached in this case.
>
> Since then, the claimant has continued to be seen for reported car accidents, an assault, and ongoing back and neck pain. She has described significant levels of back, neck and joint pain, and pain in her extremities. But the record uniformly shows that <u>all</u> of her examinations were essentially benign. Multiple imaging examinations have confirmed mild degenerative disc changes, without stenosis or any neurological compromise. She presented with some limitations in range of motion, but had intact gait, 5/5 strength, negative straight leg raise, and normal sensation. Her pain behavior was significantly exaggerated, even histrionic. Her alleged radicular symptoms did not follow a dermatological pattern and her Waddell's testing was somewhat positive (exhibits 12F; 14F; 21F; 22F). These reports are consistent and suggest exaggeration of her symptoms, possibly malingering. At one examination when she was not aware that she was observed, she ambulated normally and practiced ballerina stretching in the examination room (exhibit 22F:7)! These ongoing reports are consistent with the residual functional capacity reached in this matter, and do not support the claimant's allegations of severe pain and limitations.

AR 19 (emphasis in original). Although the ALJ may have overstated somewhat the "benign" nature of the objective clinical findings in the record, those findings fail to establish plaintiff is more physically limited than found by the ALJ. See 261-62, 266-67, 270, 278-79, 283-86, 288-89, 292, 294, 296-98, 374-81, 387-88, 392, 396-99, 407, 412-13, 420-21, 432, 448-50, 453, 455, 458, 465-72, 479, 510-17, 527-28, 689, 760-62, 829-30, 860, 867, 879, 906, 916, 921, 960, 971-72, 978-79, 985-86, 988-89, 1011-12, 1023, 1033, 1040-41, 1050, 1091, 1113-15, 1117, 1126-27.

In addition, while plaintiff challenges the ALJ's reliance on the physical findings of the DDS reviewer in this case (see AR 19) on the basis that she was not seen by that reviewer on a consistent basis, a non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, as discussed above, the medical evidence in the record fails to

ORDER - 13

establish the existence of physical functional limitations greater than those found by the ALJ or that are inconsistent with the DDS reviewer's findings.

Plaintiff further argues the evaluations forms completed by Dr. Heffner in mid-November 2009, and again in early November 2010, in which he limited her to sedentary work, should have been given greater deference. But as discussed above, these forms were not provided to the ALJ, and therefore she cannot be faulted for failing to consider or grant them weight. In addition, the Court once more finds neither form likely would have changed the ALJ's decision in this matter. As with Dr. Heffner's opinions regarding the limiting effect caused by plaintiff's mental health conditions, his findings concerning her physical impairments and limitations are equally without objective medical support in the record. See 261-62, 266-67, 270, 278-79, 283-86, 288-89, 292, 294, 296-98, 374-81, 387-88, 392, 396-99, 407, 412-13, 420-21, 432, 448-50, 453, 455, 458, 465-72, 479, 510-17, 527-28, 689, 760-62, 829-30, 860, 867, 879, 906, 916, 921, 960, 971-72, 978-79, 985-86, 988-89, 1011-12, 1023, 1033, 1040-41, 1050, 1091, 1113-15, 1117, 1126-27. Accordingly, here too the Court finds no error with respect to the ALJ's evaluation, or lack thereof, of this evidence.

VIII.   Remand for Further Administrative Proceedings Is Proper

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

ORDER - 14

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the severity of plaintiff's mental impairments and their impact on her residual functional capacity, it cannot be said at this time that the ALJ's determination that she is capable of performing other jobs existing in significant numbers in the national economy is supported by substantial evidence.[2] Remand for further administrative proceedings, therefore, is warranted in this case.

---

[2] If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).
  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).
  At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 68-69. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 69-70. Based on the testimony of the vocational expert, the ALJ found plaintiff would be able to perform other jobs existing in significant numbers in the national economy. See AR 20-21. Again, though, given the ALJ's errors in evaluating the medical evidence in the record concerning plaintiff's mental impairments, it is not clear at this time that the RFC with which she was obsessed, and thus the hypothetical question posed to the vocational expert, accurately describe all of her functional limitations. As such, the ALJ's step five determination also cannot be said to be supported by substantial evidence at this time.

ORDER - 15

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 7th day of August, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16